**The Honorable Stephen R. REED, Mayor of the City of Harrisburg, Harrisburg Authority and Fred Clark**

v.

**The HARRISBURG CITY COUNCIL, Susan Brown Wilson, Patty Kim, Daniel C. Miller, Gloria Martin–Roberts, Linda Thompson, Erica Bryce, James E. Ellison and Eric Papenfuse, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 13, 2007.

Decided July 2, 2007.

amount of these damages would be "limited as justice requires." *Lobolito,* 562 Pa. at 390

n. 10, 755 A.2d at 1292 n. 10.

Ronald M. Katzman and Royce L. Morris, Harrisburg, for appellants.

Louis B. Kupperman, Thomas A. Leonard and Robert W. Hayes, Philadelphia, for appellees.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The matter presently before the *en banc* Court involves consolidated appeals filed

by the above-named Appellants (hereafter referred to as City Council) from a February 27, 2007 order of the Court of Common Pleas of Dauphin County granting a thirty-day preliminary injunction in favor of the above-named Appellees (hereafter referred to as the Mayor). The trial court enjoined City Council from enforcing an Ordinance that it passed February 20, 2007, over a mayoral veto, and prohibited City Council's appointees to the Harrisburg Authority Board (Board) from acting as members of the Board. The trial court continued the preliminary injunction by order dated March 29, 2007. City Council has appealed both orders, and the Court granted City Council's request for expedited review.

## I

City Council questions whether the trial court misapplied the law when it determined that the Mayor had a clear right to the requested relief; whether the trial court misapplied the law when it determined that the Ordinance would not be held constitutional; whether the trial court had a reasonable basis for finding irreparable harm when the Mayor presented speculative evidence to support the request for relief; whether a reasonable basis existed for the preliminary injunction when the trial court barred City Council from presenting its defense and thereafter extended the preliminary injunction without a hearing; and whether the trial court erred in prohibiting City Council's appointees from serving on the Board. The Mayor counter-states the questions as whether the trial court granted the injunction to preserve the status quo ante when

the Ordinance and the appointments made pursuant thereto violated the Optional Third Class City Charter Law (Third Class City Charter Law), Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101–41625, and the Harrisburg City Charter; whether *City Council of Hazleton v. City of Hazleton,* 134 Pa.Cmwlth. 174, 578 A.2d 580 (1990), *aff'd by an equally divided Court,* 528 Pa. 604, 600 A.2d 191 (1992), controls this case; and whether the trial court followed proper procedure and applied the correct law in granting relief.

Harrisburg is a third-class city constituted pursuant to the Third Class City Charter Law, and the city operates under the "mayor-council plan A" form of government. *See* Sections 401–421 of the Third Class City Charter Law, 53 P.S. §§ 41401–41421. The Harrisburg Authority is a municipal authority existing pursuant to the Municipality Authorities Act, 53 Pa.C.S. §§ 5601–5623. The record reveals that on February 20, 2007 City Council appointed three members to the Board (Appellants Bryce, Ellison and Papenfuse) pursuant to Ordinance 36–2006, which City Council passed on February 20 after overriding the Mayor's veto. Previously, the Mayor made appointments to the Board with advice and consent of City Council. That changed when City Council amended Section 2–301.3 of the Harrisburg City Code to provide that it shall appoint the members to boards, commissions and authorities where such authority is vested in the "governing body or legislative branch" by statute or ordinance, subject to applicable state, federal or local laws, ordinances or regulations.[1] Section 2–301.4, governing

---

**1.** City Council originally passed Bill No. 36 of 2006 on January 23, 2007, providing as follows:

SECTION 1. Section 2–301.3 of the Codified Ordinances is hereby amended as fol-

lows (additions indicated by underscoring, deletions by [bracketing] ):

**2–301.3 APPOINTMENT PROCEDURES**

Where the appointment of members to boards, commissions and authorities is vest-

removal of appointees and filling any vacancy created by removal, was deleted in its entirety.

The Mayor filed a three-count civil action complaint on February 22, 2007, later amended on February 26, 2007 to allege that City Council violated the Third Class City Charter Law in enacting the Ordinance. The Mayor sought declaratory judgment as to the validity of the Ordinance and preliminary and permanent injunctions against the enforcement of the Ordinance and writs of quo warranto prohibiting the appointees from serving as members of the Board. Also on February 26 the Mayor filed an amended petition for special injunction and temporary restraining order, heard February 27, after which the trial court issued the subject preliminary injunction that enjoined City Council from enforcing its Ordinance and prohibited its appointees from acting as members of the Board.

City Council appealed the order the next day to this Court, and on March 2, 2007 the trial court directed City Council to file a statement of matters complained of on appeal pursuant to Pa. R.A.P.1925(b). The trial court did not issue an opinion, but it did make findings and conclusions in its February 27, 2007 order. It concluded that City Council's appointments could not be made prior to the Ordinance effective date, or no sooner than March 12, 2007; it found that the appointments carry a high potential for irreparable harm, that the new Board potentially could make decisions that might adversely affect the Authority's fiscal position along with having an impact upon bondholders and guarantors of the bonds, that damages could not be recoverable by monetary considerations alone and that the Mayor was likely to succeed in his constitutional challenge to the Ordinance.[2]

ed in the governing body or the legislative branch [City] by statute or ordinance, such members shall be appointed by City Council, subject, however, to all provisions of applicable state, federal or local laws, ordinances or regulations. Where the appointment of members to boards, commissions and authorities is vested in the Mayor or Executive Branch by statute or ordinance, such members shall be appointed by the Mayor, subject, however, to all provisions of applicable state, federal or local laws, ordinances or regulations. Where the appointment of members to boards, commissions and authorities is not specifically enumerated by state, federal, or local laws, ordinances or regulations, such members shall be appointed by [the Mayor with the advice and consent of Council] City Council, subject, however, to all provisions of applicable state, federal or local laws, ordinances or regulations.
SECTION 2. Section 2–301.4 of the Codified Ordinances is hereby deleted.
[2–301.4 APPOINTEE REMOVAL AND VACANCY
Except as otherwise provided by law, in any case where appointment to any board, commission or authority is made by the Mayor with the advice and consent of Council, the appointee may be removed at the pleasure of the Mayor and the vacancy thus created filled for the balance of the unexpired term, subject however, to all provisions of applicable state, federal or local laws, ordinances or regulations.]

**2.** The trial court's February 27, 2007 order provides as follows:

AND NOW, this 27th day of February, 2007, upon consideration of Plaintiffs' Amended Petition for Special Injunction and Temporary Restraining Order and hearing held thereon this date,
IT IS HEREBY ORDERED as follows:
1. Defendants shall file an Answer to the Amended Petition on or before March 9th.
2. Plaintiffs shall file a brief in support of their amended Petition on or before March 19th.
3. Defendants shall file a reply brief on or before March 29th.
With regard to the Petition for Special Injunction and Temporary Restraining Order, the Court finds based on the testimony presented that,
1. The appointments made to the Authority pursuant to City Ordinance No. 36

## II

The Pennsylvania Supreme Court has elaborated on the standards of appellate review of preliminary injunction orders. In *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992), the Supreme Court explained that generally appellate courts review a trial court order either granting or denying a preliminary injunction under an abuse of discretion standard. The court recognized that while the appellate court does not inquire into the merits of the controversy it does examine the record to determine whether there are any apparently reasonable grounds for the trial court's action. *See Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,*

573 Pa. 637, 828 A.2d 995 (2003) (relying on, *inter alia, Roberts v. Board of Dirs. of Sch. Dist. of Scranton,* 462 Pa. 464, 341 A.2d 475 (1975)). In examining the meaning of the phrase "apparently reasonable grounds," the Supreme Court provided an overview of case law distilled to the following essential prerequisites before a preliminary injunction may issue:

First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages.... Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an in-

of 2006 are in violation of the plain language of the ordinance which says that said ordinance shall not be effective for 20 days following passage. As we find the date of passage to be February 20, 2007, said appointments, even by the city's own ordinance, could not take effect until March 12, 2007.

2. Notwithstanding that infirmity, the Court finds that the appointments to the Harrisburg Authority, which is charged with an extraordinary amount of responsibility with regard to vital services to the citizens of this city, carry a high potential for irreparable harm, both to the operations of the Authority and to fiscal issues which are present.

3. There is a high potential that such board could make decisions which would adversely affect the fiscal position of the Authority, as well, of course, of any bond holders and guarantors of those bonds to which the Authority is indebted.

4. We also find as a fact that these damages could not be compensable by monetary consideration alone.

5. We further find that the Plaintiffs are likely to succeed in their Constitutional challenge to the subject ordinance.

Accordingly, the Court will enter this date a Preliminary Injunction and Temporary Restraining Order which shall be effective for 30 days and under which the Defendants are prohibited, pending further Order

of this Court, from enforcing directly or indirectly Bill No. 36 of 2006.

We further enjoin the Defendants [Bryce, Ellison and Papenfuse] pending further Order of this Court, from acting in any capacity as members of the Board of the Harrisburg Authority.

The trial court continued the preliminary injunction on March 29, 2007, ordering as follows:

**AND NOW,** this 29th day of March[,] 2007, upon consideration of Plaintiffs' Application to Vacate Automatic Supersedeas and to Continue this Court's February 27, 2007 Preliminary Injunction and Temporary Restraining Order to Preserve the Status Quo Ante Pending Defendants' Appeal (the "Application"), all responses thereto, and after hearing, it is hereby **ORDERED** and **DECREED** as follows:

1. Plaintiffs' Application is **GRANTED.**
2. The automatic supersedeas on appeal imposed by Pennsylvania Rule of Appellate Procedure 1736(b) is **VACATED;** and
3. The terms, provisions, and prohibitions of this Court's February 27, 2007 Preliminary Injunction and Temporary Restraining Order, as docketed on February 28, 2007, and hereby **CONTINUED** in force and effect to protect and preserve the status quo ante during the pendency of Defendants/Appellants' appeal to the Commonwealth Court of Pennsylvania.

junction will not substantially harm other interested parties in the proceedings.... Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct.... Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits.... Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity.... Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Centre*, 573 Pa. at 646–647, 828 A.2d at 1001 (citations omitted).

■ Former Chief Justice Nix noted in his dissent in *City of Philadelphia v. District Council 33, American Fed'n of State, County & Mun. Employees*, 528 Pa. 355, 371, 598 A.2d 256, 264 (1991), that the Supreme Court previously had broadened its explanation of the standard of review to introduce the term "essential prerequisites" when courts examine whether "apparently reasonable grounds" exist for a decision to grant or to deny a preliminary injunction. In *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 770–771 (1965), the Supreme Court expounded as follows:

> The scope of our review on an appeal from a decree either granting or denying a preliminary injunction is "to examine the record only to determine 'if there were any *apparently reasonable grounds* for the action of the court below....' *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956). (Emphasis supplied). *Summit Township v. Fennell,* 392 Pa. 313, 140

A.2d 789 (1958)." *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.,* 410 Pa. 214, 215, 189 A.2d 180, 181 (1963). And the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp., supra.* Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded: *Keystone Guild, Inc. v. Pappas,* 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon,* 393 Pa. 33, 141 A.2d 576 (1958).

In addition, in *County of Allegheny v. Commonwealth,* 518 Pa. 556, 560, 544 A.2d 1305, 1307 (1988), the Supreme Court was unequivocal when it held: "For a preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others." Also, in *Anglo–American Ins. Co. v. Molin,* 547 Pa. 504, 691 A.2d 929 (1997), the court indicated that it must examine whether the factors were present before a preliminary injunction might issue and began its examination in that case with a consideration of whether the petitioner's right to relief was clear. The court noted that an injunction may not issue if the right to relief is not clear.

In *Anglo–American Ins.* the Supreme Court reversed this Court's order granting a preliminary injunction after it reviewed the record, examined the five factors that this Court stated were present and then determined that the defendants' right to relief was not clear, although they might prevail in their claims for certain insurance coverage after their case had been fully litigated. In reversing the preliminary injunction issued in *Novak v. Commonwealth,* 514 Pa. 190, 523 A.2d 318 (1987), against the Department of Revenue and vacating the judgment against it, the Supreme Court rejected the speculative nature of irreparable harm allegedly suffered by the appellees, lottery employees who were furloughed during collective bargaining grievance proceedings. In reviewing the sole question of the propriety of the preliminary injunction issued in *Sameric Corp. of Market Street v. Goss,* 448 Pa. 497, 295 A.2d 277 (1972), to prohibit the appellant's use of a name alleged to be similar to the appellee's name, the Supreme Court held that the appellee failed to show irreparable injury, that it made no showing of economic loss and that its proof of injury in the nature of loss of goodwill was too speculative and conjectural to support the injunction. The court reaffirmed the principle that speculative considerations cannot form the basis for a preliminary injunction. In *Herman v. Dixon,* 393 Pa. 33, 36–37, 141 A.2d 576, 577 (1958), the Supreme Court noted:

Since a preliminary injunction is somewhat like a judgment and execution before trial, it will only issue where there is an urgent necessity to avoid injury which cannot be compensated for by damages and should never be awarded except when the rights of the plaintiff are clear. Also, it should in no event ever be issued unless greater injury will be done by refusing it than in granting it.

*See also John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977) (reaffirming principle stated in *Herman* and discussing essential prerequisites). As for the essential prerequisites, the Supreme Court noted in *New Castle Orthopedic Assocs. v. Burns,* 481 Pa. 460, 392 A.2d 1383 (1978), that *Herman* states the threshold evidentiary requirement to be met before a preliminary injunction may issue, *i.e.,* actual proof of irreparable harm.

Where the trial court denied an application by appellant physicians and nurses for a preliminary injunction to enjoin the Department of Public Welfare from implementing a plan to reduce the staff of a local state hospital, the Supreme Court held the following in *Singzon v. Department of Public Welfare,* 496 Pa. 8, 13–14, 436 A.2d 125, 128 (1981), in affirming the trial court's denial:

It is clear from our review of the record that the lower court had eminently reasonable grounds for concluding that appellants had failed to meet the first criterion for the issuance of a preliminary injunction. While no one wishes to see a hospital in which one works or receives services reduce its capabilities, the record supports Judge Williams' findings that the announced staff reduction at [Shamokin State General Hospital] poses no immediate threat to the health, safety and welfare of the patients.

As the first prerequisite to the granting of a preliminary injunction has not been met, there is no need to address the others; nor need we address appellants' contentions that DPW acted without authority or that, if it acted with authority, it did so arbitrarily, capaciously and in bad faith. We note only that a preliminary examination of the statutory authority advanced in behalf of such

DPW authority, while not free from all doubt does offer support for the action taken with respect to SSGH. Without deciding the issue on its merits, this authority renders appellants' right to relief far from clear, and the wrong they attribute to appellees far from manifest. (Footnote omitted.)

### III

The Supreme Court has explained that appellate courts must engage in a review of the record and provide some discussion of the reasons for reversing a trial court's order granting or denying a preliminary injunction, and that review is limited to determining whether the record demonstrates any apparently reasonable grounds to support the trial court's decision. *See Roberts.* Accordingly, the Court must review the record to ascertain whether the Mayor satisfied all of the essential prerequisites necessary to permit the trial court to grant the preliminary injunction against City Council. *See County of Allegheny* (holding that each prerequisite must be met before preliminary injunction may issue and that if petitioner fails to satisfy any one prerequisite no need exists for courts to address the others).

 As an initial matter, the Court notes City Council's concession that it made its appointments prior to the March 12, 2007 effective date of the Ordinance, *see* Section 608(b) of the Third Class City Charter Law, 53 P.S. § 41608(b), and, because there is no dispute that appointments could be made after the effective date to comply with provisions of the Ordinance, the Court thus concludes that the trial court arguably had apparently reasonable grounds to at least enjoin City Council from seating the appointees prior to March 12, 2007. Consequently, the Court agrees that the appointees could not validly be seated prior to March 12, 2007

and that the trial court could enjoin them from acting as members of the Board prior to that date. By contrast, however, the trial court had no apparently reasonable grounds thereafter to enjoin City Council from enforcing its Ordinance. Because of the trial court's error in this connection, the Court is compelled to reverse the trial court's orders granting the preliminary injunction in favor of the Mayor and accordingly by the attached order dissolves the preliminary injunction.

An examination of the record consistent with the principles applicable to this Court's appellate review of the trial court decision establishes that the Mayor did not satisfy all of the essential prerequisites necessary to allow the trial court to issue the preliminary injunction. Absent from the trial court's February 27, 2007 order and elsewhere in the record is any citation to legal authority or evidence to support the finding that the appointments "carry a high potential for irreparable harm, both to the operations of the Authority and to fiscal issues which are present." Trial Court's Order at 2. The trial court additionally observed at the February 27, 2007 hearing that the legality of the Ordinance was not a matter that would create irreparable harm "in and of itself." Reproduced Record at 246a.

The Mayor expressed concern about the new appointees' experience and that the appointments might cause delay in completing the Resource Recovery Plant project underway (referred to as the Harrisburg Incinerator); that immediate completion of the construction is required to increase operating capacity; and that failure to complete the project might cause a $1 million loss per month in expected revenue and adversely impact the City, the County and the taxpayers. The Mayor offered no actual or specific proof. Nor was actual proof presented as to any ad-

verse effect upon the Authority's bonds and bondholders. The Supreme Court has held that speculation and conjecture will not suffice, *see Novak* and *Sameric Corp.,* and that the threshold evidentiary requirement that must be met before a preliminary injunction may issue is *actual proof* of irreparable harm. *Herman.*

■ Although the record does not contain actual proof of irreparable harm, the Court will address as well the trial court's reasoning that the Mayor's right to relief was clear. The trial court cited no statutory or case law authority to support its reasoning, although a transcript of the February 27, 2007 hearing shows that the trial court recognized, as it had stated previously, that it was not clear under the law whether the Ordinance violated any enabling statutes. The trial court also was uncertain regarding the applicability of *Hazleton.* In *Hazleton* the Court stated that the former Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended, formerly* 53 P.S. §§ 301–322, repealed by Section 3 of the Act of June 19, 2001, P.L. 287, was a statute of general statewide application, that municipal authorities are independent agencies of the state and that the power to appoint the authorities' members remained in the governing body as defined under Section 102 of the former Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, *as amended, formerly* 53 P.S. § 1–102, repealed by Section 2(a) of the Act of December 19, 1996, P.L. 1158. *Hazleton,* 578 A.2d at 583.

Moreover, the trial court engaged in no discussion of the Municipality Authorities Act and its applicability to this case, engaged in no discussion of any other statutory provisions that define the term "governing body" and engaged in no discussion of whether the Ordinance removed any power delegated by statute or ordinance to the Mayor. *Compare Singzon* (noting, without deciding the issue on the merits, that preliminary review of statutory authority rendered appellants' right to relief far from clear). And the trial court stated its awareness during the hearing that the Mayor's right to relief was *not* clear but granted the preliminary injunction nonetheless. The Supreme Court was unequivocal when it held in *Anglo–American Ins.* that a preliminary injunction may not issue if the right to relief is not clear, and reviewing courts may not ignore this very fundamental principle.[3]

■ In conclusion, because the Mayor failed to meet two very significant essential prerequisites for the issuance of a preliminary injunction, the Court need not address the remaining prerequisites. *See* County of Allegheny. Suffice it to say that the law is well settled in this Commonwealth that an ordinance is presumed to be valid and that a heavy burden rests upon those who seek to prove that it is unconstitutional. *See Nutter v. Dougherty,* 921 A.2d 44 (Pa.Cmwlth.), *appeal granted in part,* —— Pa. ——, 922 A.2d 873 (2007). For the reasons discussed herein, the Court must reverse the trial court's orders granting the Mayor's request for the preliminary injunction issued in his favor and against City Council.

### ORDER

AND NOW, this 2nd day of July, 2007, the Court reverses the orders of the Court

---

**3.** *See also School Dist. of Wilkinsburg v. Wilkinsburg Educ. Ass'n,* 542 Pa. 335, 667 A.2d 5 (1995) (reversing grant of preliminary injunction and dissolving the injunction because the record failed to establish irreparable harm or that issuing preliminary injunction avoided greater harm than by refusing it or that there might not be an adverse effect upon public interest).

of Common Pleas of Dauphin County that issued a preliminary injunction in the above-captioned matter and hereby dissolves the preliminary injunction.

President Judge LEADBETTER and Judge LEAVITT dissent and would affirm the order of February 27, 2007, vacate the order of March 29, 2007 and remand this matter for findings on the issue of right to relief, in accordance with the discussion of the majority.

Judge COHN JUBELIRER did not participate in the decision in this case.